UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAYSHAWN OWENS,

                       Plaintiff,

v.                                                      9:16-CV-0097
                                                     (GTS/DJS)

CHRISTIAN CLARK, Superintendent, Albany Cty.
Corr. Facility, in His Individual and Official
Capacities; ALBANY CTY. CORR. MED. CARE;
DANIEL CARSON, Registered Nurse, in Individual
and Official Capacities; TSUNGANI CLEMONS,
Registered Nurse, in Individual and Official
Capacities; and ANNA PAULINO, Nurse
Practitioner, in Individual and Official Capacities,

                       Defendants.
_____

CHRISTIAN CLARK, Superintendent, Albany Cty.
Corr. Facility,

                       Cross-Claimant,

v.

ALBANY CTY. CORR. MED. CARE;
DANIEL CARSON, Registered Nurse;
TSUNGANI CLEMONS, Registered Nurse;
and ANNA PAULINO, Nurse Practitioner,

                       Cross-Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

RYANNE KONAN LAW OFFICE & LEGAL SERVS.    RYANNE G. KONAN, ESQ.
  Counsel for Plaintiff
4 Marshall Road, Suite 107
Wappingers Falls, NY 12590

| | |
|---|---|
| HON. DANIEL C. LYNCH<br>Albany County Attorney<br>  Counsel for Defendant and Cross-Claimant Clark<br>112 State Street<br>Albany, NY 12207 | KEVIN M. CANNIZZARO, ESQ.<br>Assistant Albany County Attorney |
| STEINBERG, SYMER & PLATT, LLP<br>  Counsel for Defendants and Cross-Defendants<br>  Albany County Corr. Med. Care, Carson,<br>  Clemons and Paulino | JONATHAN E. SYMER, ESQ.<br>ELLEN A. FISCHER, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this prisoner civil rights action filed by Jayshawn Owens ("Plaintiff") against Christian Clark ("Defendant Clark") and Albany County Correctional Medical Care, Daniel Carson, Tsungani Clemons and Anna Paulino ("CMC Defendants"), are Defendant Clark's motion for judgment on the pleadings with regard to Plaintiff's claims pursuant to Fed. R. Civ. P. 12(c), and the CMC Defendants' motion for judgment on the pleadings with regard to Plaintiff's claims and Defendant Clark's cross-claim pursuant to Fed. R. Civ. P. 12(c). (Dkt. Nos. 36, 47.) For the reasons set forth below, Defendant Clark's motion is granted, and the CMC Defendants' motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment[1] by intentionally or recklessly denying him adequate dental care for a broken jaw

---

[1] The Court notes that, while Plaintiff's counsel characterizes Plaintiff's claim as arising under the Eighth Amendment, it actually arises under the Due Process Clause of the

sustained in a fight with another inmate while he was a pre-trial detainee at the Albany County Correctional Facility ("ACCF") on January 16, 2014. (Dkt. No. 22.) More specifically, Plaintiff alleges as follows. Despite the fact that Plaintiff complained three times to them that he thought the left side of his jaw was broken (i.e., on January 16, 19, and 21, 2014), Defendants did not provide him with pain medication until January 19 and 21, did not provide him with other medication until January 21, and did not order an x-ray examination of his jaw until January 21. (*Id*.) The x-ray examination that was taken on January 22 was a "cat scan x-ray," not the "recommended . . . Panoramic x-ray." (*Id*.) At some point between January 22 and February 5, 2014, in order to complain about the fact that the x-ray examination results incorrectly reported that there was no fracture, he asked for a grievance form from the duty officer but was denied the form. (*Id*.) Plaintiff was forced to "file[] the grievance himself on regular writing paper," to which he received no response. (*Id*.) On or about February 5, 2014, he was released from the ACCF and consulted with his own dentist, who took a "Panoramic x-ray" examination of his jaw and determined that he had a fracture of his jaw which had healed improperly due to not having been wired shut. (*Id*.) Familiarity with Plaintiff's constitutional claim, and the factual allegations supporting it, is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id*.)

---

Fourteenth Amendment, because Plaintiff was a pre-trial detainee at the time of the events. *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) ("When Charles needed medical attention, he was a pretrial detainee, not a person who had been convicted, and hence the Eighth Amendment did not apply . . . . The rights of one who has not been convicted are protected by the Due Process Clause . . . ."). The Court also notes that it is able to so liberally construe Plaintiff's claim, despite the fact that he is not proceeding *pro se*, because *all* complaints must be construed so as to do justice. Fed. R. Civ. P. 8(e). Finally, the Court notes that, generally, the standard governing a pretrial detainee's Fourteenth Amendment claim of deliberate indifference to a serious medical need is similar to the standard governing a convicted prisoner's Eighth Amendment claim of deliberate indifference to a serious medical need. *Weyant*, 101 F.3d at 856-58.

3

### B. Parties' Briefing on Defendant Clark's Motion for Judgment on the Pleadings

#### 1. Defendant Clark's Memorandum of Law

Generally, in support of his motion for judgment on the pleadings, Defendant Clark asserts three alternative arguments: (1) as a threshold matter, Plaintiff fails to allege facts plausibly suggesting that Clark, a supervisor, was personally involved in the constitutional violation alleged, because (a) there is no allegation that Clark was directly involved in the alleged violation, (b) there is no allegation that any of the ACCF employees whom Clark supervised were directly involved in Plaintiff's medical care, and (c) Plaintiff only conclusorily alleges that Clark "knew [of] and implemented a policy of rejecting [an] inmate's grievance against the [ACCF] medical department"; (2) in the alternative, even if Plaintiff has alleged such personal involvement, he has failed to allege facts plausibly suggesting that such a violation actually occurred, because (a) in order to satisfy the subjective element of a deliberate-indifference claim, Plaintiff must show that Clark acted with a mental state akin to criminal negligence, and (b) here, contrary to making any such allegation, Plaintiff alleges that he was seen by the ACCF medical department on at least four separate occasions, provided with medications on at least two separate occasions, and provided with an x-ray examination on one occasion, between January 16 and January 22, 2014; and (3) in the alternative, Clark is protected from liability as a matter of law by the doctrine of qualified immunity because (a) one of the requirements of overcoming a qualified immunity defense is a showing that the constitutional right was clearly established during the time in question, (b) such a right is not clearly established where, *inter alia*, there is a division among the district courts of a particular circuit, and/or the circuit court has yet to render a determination on the issue, (c) here, following the

Supreme Court's issuance of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), four of the five means by which a supervisory official may become personally involved in a violation under 42 U.S.C. § 1983 (identified in *Colon v. Coughlin*, 58 F.3d 865 [2d Cir. 1995]) have arguably been eliminated, leaving only the "direct participation" means (which does not apply here), and (d) this open question has been acknowledged not just by the district courts but by the Second Circuit itself. (*See generally* Dkt. No. 36, Part 4 [Def. Clark's Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, his response, Plaintiff asserts three arguments: (1) he has sufficiently alleged that Defendant Clark was personally involved in the constitutional violation alleged because (a) the Supreme Court's decision in *Iqbal* does not limit the five means by which a supervisory official may be deemed personally involved in a violation under 42 U.S.C. § 1983, but merely rejects the non-direct-participation means only for intent-based claims like equal protection claims (i.e., not for deliberate-indifference claims), (b) here, Clark was aware, through Plaintiff's grievance on plain paper (which it can be inferred that Clark read), that inmates were being denied grievance forms and a violation was being committed by the medical department, and (c) nonetheless, Clark "did not initiate an investigation" into whether "inmates were being denied the [opportunity] to file grievances," nor did he remedy the alleged violation by the medical department; (2) Plaintiff has alleged facts plausibly suggesting that such a violation occurred, because (a) Plaintiff has shown that Clark subjected him to an objectively serious deprivation, and (b) Plaintiff has shown that Clark acted with a mental state akin to criminal negligence by alleging that Clark "was aware of the inadequacy of the medical treatment . . . and did not act to remedy the situation"; and (3) Clark is not protected from liability as a matter of law by the

5

doctrine of qualified immunity because Plaintiff's constitutional right to be free from deliberate indifference to his serious medical needs was clearly established during the time in question. (*See generally* Dkt. No. 40 [Plf.'s Opp'n Memo. of Law].)

### 3. Defendant Clark's Reply Memorandum of Law

Generally, in his reply, Defendant Clark asserts two arguments: (1) Plaintiff has not alleged facts plausibly suggesting Defendant Clark's personal involvement in the constitutional violation alleged because (a) the denial of a medical grievance by a high-level official does not establish the tangible connection between the alleged unlawful conduct and the supervisory defendant that is required under 42 U.S.C. § 1983, and (b) indeed, here, Plaintiff does not even allege facts plausibly suggesting that his grievance was denied but that, during the period that elapsed from when he filed his grievance on or after January 22, 2014, and when he was released from ACCF on February 5, 2014, he "never received a response to his grievance"; and (2) in the alternative, Clark is protected from liability as a matter of law by the doctrine of qualified immunity because it was objectively reasonable for him to believe that the medical care and treatment afforded to Plaintiff was adequate and in compliance with what the Constitution requires. (*See generally* Dkt. No. 45 [Def. Clark's Reply Memo. of Law].)

### C. Parties' Briefing on the CMC Defendants' Motion to Dismiss for Failure to State a Claim

#### 1. CMC Defendants' Memorandum of Law

Generally, in support of their motion to dismiss for failure to state a claim, the CMC Defendants assert four arguments: (1) based on Plaintiff's own factual allegations, his claims are barred by the applicable three-year statute of limitations because (a) more than three years elapsed between the alleged wrongful conduct of Defendants Carson, Clemons and Paulino on

January 16, 19 and 21, 2017, and Plaintiff's first assertion of his claims against them (in his Amended Complaint) on January 24, 2017, and (b) NY CLPR § 1024 (which generally applies under the "relation-back doctrine") does not render Plaintiff's claims timely given that (i) he did not exercise due diligence (prior to the running of the statute of limitations) to identify the above-referenced Defendants by name and (ii) he did not describe the John and Jane Doe Defendants in his original Complaint in such a form as to fairly apprise the above-referenced Defendants that they were the intended Defendants; (2) in any event, Plaintiff has failed to state a claim of deliberate indifference to a serious medical need because (a) he has failed to allege facts plausibly suggesting the objective criterion of the claim (in that the above-referenced Defendants acted reasonably in responding to Plaintiff's health risk, and they examined him, provided him with medications and referred him to a dentist for an x-ray examination) and (b) he has failed to allege facts plausibly suggesting the subjective criterion of the claim (in that the above-referenced Defendants' brief delays in providing medication and arranging for an x-ray due to their errors in diagnosis amount, at most, to simple negligence and not culpable recklessness); (3) Plaintiff has failed to state a claim of employer liability against Defendant CMC, under *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658 (1978), because he has not alleged facts plausibly suggesting that the violation occurred pursuant to a corporate custom, policy or practice, but merely that there was a single decision by a non-high ranking employee; and (4) Defendant Clark's Amended Answer only conclusorily alleges the basis for a cross-claim against the CMC Defendants for indemnification or contribution. (*See generally* Dkt. No. 47, Part 2 [CMC Defs.' Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in his response, Plaintiff asserts two arguments: (1) NY CPLR § 1024 applies (so as to render his claims timely) because (i) he exercised due diligence (prior to the running of the statute of limitations) to identify the above-referenced Defendants by name (in that the identities of the above-referenced Defendants was contained in discovery which he diligently sought and which was not provided to him until December 19, 2016), and (ii) he described the John and Jane Doe Defendants in his original Complaint in such a way as to fairly apprise the above-referenced Defendants that they were the intended Defendants (given that the above-referenced Defendants knew which employees had examined and/or treated Plaintiff on the days and location in question); and (2) Plaintiff has stated a claim of deliberate indifference to a serious medical need because (a) he has alleged facts plausibly suggesting the objective criterion of the claim (in that a broken jaw is a sufficiently serious condition, and the denial of pain medication for four days is an unreasonable response) and (b) he has alleged facts plausibly suggesting the subjective criterion of the claim (in that a jury can reasonably infer a culpable mental state on behalf of the above-referenced Defendants based on the nature of Plaintiff's complaints and the number of times he made them). (*See generally* Dkt. No. 52 [Plf.'s Opp'n Memo. of Law].)

### 3. Defendant Clark's Opposition Memorandum of Law

Generally, in his response, Defendant Clark asserts two arguments: (1) his Amended Answer alleges facts plausibly suggesting a cross-claim against the CMC Defendants for indemnification or contribution; and (2) if his Amended Answer does not do so, then Defendant Clark should be granted an opportunity to amend his cross-claim. (*See generally* Dkt. No. 53 [Def. Clark's Opp'n Memo. of Law].)

### 4. CMC Defendants' Reply Memorandum of Law

The CMC Defendants did not file a reply with regard to their motion to dismiss. (*See generally* Docket Sheet.)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing a Motion for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

B. **Legal Standards Governing Plaintiff's Claims and Defendants' Defenses**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claim in this action and Defendants' defenses, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* Dkt. No. 36, Part 4 [Def. Clark's Memo. of Law]; Dkt. No. 40 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 45 [Def. Clark's Reply Memo. of Law]; Dkt. No. 47, Part 2 [CMC Defs.' Memo. of Law]; Dkt. No. 52 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 53 [Def. Clark's Opp'n Memo. of Law].)

III. **ANALYSIS**

A. **Whether Plaintiff's Claim Against Defendant Clark Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant Clark's memoranda of law. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order. To those reasons, the Court would add only three points, which are meant to supplement (and not supplant) Defendant Clark's reasons.

First, according to Plaintiff's own allegations, at most fourteen days elapsed between Plaintiff's filing of his grievance on plain paper and his transfer from ACCF (Dkt. No. 1, at ¶¶

19-20), which is an insufficient amount of time in which to reasonably expect Defendant Clark to (1) be informed of the grievance, (2) investigate Plaintiff's complaint of inadequate medical care, (3) determine that the type of x-ray that had been arranged for Plaintiff was incorrect (especially given that Clark is not alleged to be a physician, *see id.* at ¶¶ 7, 23, 98, 99), (4) determine what type of x-ray would have been correct (again, especially given that Clark is not alleged to be a physician), and (5) order members of the staff of the medical department (whom Plaintiff alleges were directly employed by *CMC*, *see id.* at ¶¶ 8-11) to arrange the correct type of x-ray. Simply stated, Clark did not have a reasonable opportunity to learn of the alleged violation and remedy it before Plaintiff was released; nor can Clark be reasonably found to have been grossly negligent in supervising subordinates who committed the alleged wrongful act(s).

Second, Plaintiff's allegations that Defendant Clark implemented a policy of rejecting inmates' grievances against the medical department, and/or failed to remedy his staff's asserted obstruction of the grievance-filing process (*id*. at ¶¶ 22, 105), are insufficient because (1) Plaintiff (despite being represented by counsel and having already amended his complaint) has not asserted a constitutional claim complaining of the availability of the grievance process (and his above-described allegations do not plausibly suggest that Clark was personally involved in *the deliberate-indifference-to-a-serious-medical-need violation* that is alleged in the Amended Complaint), and (2) in any event, the alleged failure to provide Plaintiff with a grievance form was, according to Plaintiff's own factual allegations, remedied by Plaintiff's ability to successfully submit a grievance on plain paper, and his allegation that Clark implemented a grievance-rejection "policy" is wholly conclusory. (*Id*. at ¶¶ 19, 23.)

Third, in the alternative, the Court dismisses this claim because it finds (for the reasons stated below in Part III.B. of this Decision and Order) that there was no underlying constitutional violation in which Defendant Clark could have been personally involved.

For all of these reasons, Plaintiff's claim against Defendant Clark is dismissed.

### B. Whether Plaintiff's Claims Against the CMC Defendants Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in the CMC Defendants' memorandum of law in chief. *See, supra,* Part I.C.1. of this Decision and Order. To those reasons, the Court would add only two points, which are meant to supplement (and not supplant) the above-referenced reasons.

First, Plaintiff's allegations do not satisfy the subjective criterion necessary to state a claim of deliberate indifference to a serious medical need. Granted, based on Plaintiff's factual allegations, it appears clear that Defendants Carson, Clemons and Paulino erred in not providing Plaintiff with pain medication between January 16 and 19, and/or not ordering an x-ray examination of his jaw between January 16 and January 21, 2014. However, based on Plaintiff's factual allegations, on January 16 Defendant Carson examined Plaintiff and stated that she did not see anything wrong; on January 19 Defendant Clemons saw him, placed him on a waiting list to see a nurse practitioner, and provided him with pain medication; and on January 21 Defendant Paulino saw him, provided him with pain medication and "Flexerie" (presumably Flexeril®), and referred him to a dentist for an x-ray (which he received on January 22). (Dkt. No. 22, at ¶¶ 14-18.) Under the circumstances alleged, the three-day delay in providing Plaintiff with pain medication, and five-day delay in ordering an x-ray, do not plausibly suggest a mental state akin to criminal recklessness. *See Palascio v. Ocasio*, 02-CV-6726, 2006 WL 2372250, at *2, 6, 11

(S.D.N.Y. Aug. 11, 2006) ("Palacio testified that he told Edano that he thought his jaw was broken. . . . Edano treated Palacio's injury with Motrin. . . . Defendant Edano's decision not to x-ray Palacio's jaw and his failure to diagnose the fracture [for *weeks* after the January 26 assault] do not support a claim under 42 U.S.C. § 1983. Viewed in a light most favorable to the Plaintiff, the record does not suggest that Edano evinced a culpable recklessness in the manner in which he diagnosed Palacio's injury. At most, the facts might support a claim of medical malpractice.") [emphasis added], *aff'd*, 345 F. App'x 668 (2d Cir. 2009).

Moreover, even if it was Defendant Paulino (and not the dentist) who allegedly erred in giving Plaintiff a "cat scan x-ray" instead of a "Panoramic x-ray" and allegedly misreading the "cat scan x-ray," the errors were ones of judgment. Numerous courts recognize the point of law that a disagreement between a non-prison medical provider and a prison medical provider regarding a prisoner's medical treatment does not establish deliberate indifference.[2]

---

[2] *See, e.g., Cole v. Goord*, 04-CV-8906, 2009 WL 1181295, at *6-9 (S.D.N.Y. Apr. 30, 2009) (Lynch, J.) (finding that a prison doctor's disagreement with an outside specialist about an inmate's course of treatment, including the inmate's need for surgery and proper medication, does not establish deliberate indifference), *aff'd*, 379 F. App'x 28 (2d Cir. 2010); *Ross v. Kelly*, 784 F. Supp. 35, 45-46 (W.D.N.Y.) ("[M]any of the medical opinions relating to Ross were modified or challenged by different physicians . . . . It is . . . hard to fault civilian prison personnel when the medical experts differed on the nature of care required."), *aff'd*, 970 F.2d 896 (2d Cir. 2002); *Williams v. M.C.C. Inst.*, 97-CV-5352, 1999 WL 179604, at *7 (S.D.N.Y. Mar. 21, 1999) ("[A] difference of opinion . . . among medical professionals . . . as to the appropriate course of medical treatment does not in and of itself amount to deliberate indifference."), *aff'd*, 101 F. App'x 862 (2d Cir. 2004); *Gardner v. Zaunbrecher*, 95-CV-1543, 1996 WL 507072, at *2 (N.D.N.Y. Sept. 4, 1996) (Pooler, J.) (finding that a "disagreement among [the plaintiff's] physicians" over the proper course of his treatment did not constitute conscious or callous indifference to a serious medical need); *Webb v. Jackson*, 92-CV-2149, 1994 WL 86390, at *3 (S.D.N.Y. Mar. 16, 1994) ("It is well established that a mere differences [sic] in opinion, whether between doctors or laymen, based on medical care does not give rise to an Eighth Amendment violation of inadequate medical treatment pursuant to section 1983"), *aff'd*, 47 F.3d 1158 (2d Cir. 1995).

Furthermore, if it was the dentist who allegedly erred in giving Plaintiff a "cat scan x-ray" instead of a "Panoramic x-ray" and allegedly misreading the "cat scan x-ray," then Defendants Carson, Clemons and Paulino cannot be held liable for those errors: as the Court explained on page 12 of its Decision and Order of October 21, 2016, in forming his medical judgment, a prison medical care provider is entitled to rely on the medical judgment of a specialist, without being said to have acted with deliberate indifference. (Dkt. No. 17, at 12.)

Second, by failing (in his opposition memorandum of law) to oppose the legal argument advanced by CMC Defendants for the dismissal of Plaintiff's claim against Defendant CMC, Plaintiff has lightened the CMC Defendants' burden with respect to that argument such that, in order to succeed on that argument, the CMC Defendants need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.[3] The Court finds that, at the very least, the CMC Defendants haves met that modest threshold burden with respect to their argument.

In any event, the Court would accept the CMC Defendants' argument even if it were to subject it to the more-rigorous scrutiny appropriate for a contested motion. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1995). Here, the single incident of alleged unconstitutional activity was the

---

[3] *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

alleged act of Defendants Carson, Clemons and Paulino of not providing Plaintiff with pain medication between January 16 and 19, and/or not ordering an x-ray examination of his jaw between January 16 and January 21, 2014. Moreover, the Amended Complaint contains no factual allegation plausibly suggesting that the single incident was caused by an existing, unconstitutional corporate policy, which can be attributed to Defendant CMC.

In the alternative, the Court dismisses this claim because it finds (for the reasons stated above in its first point) that there was no underlying constitutional violation by Defendants Carson, Clemons and Paulino for which the CMC Defendant could be responsible.

For all of these reasons, the CMC Defendants' motion for judgment on the pleadings is granted.

C. **Whether Plaintiff Should Be *Sua Sponte* Afforded a Further Opportunity to Amend His Claims Before Their Dismissal**

After carefully considering the matter, the Court answers this question in the negative for each of three alternative reasons: (1) Plaintiff has already filed an Amended Complaint (with the benefit of counsel);[4] (2) he has not requested leave to amend;[5] and (3) the defects in his claims

---

[4] *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend."); *Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 F. App'x 388 (2d Cir. 2009).

[5] *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [for leave to amend a complaint] that was not made."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (finding that the district court "was

(which, although specific, simply are not actionable) appear substantive such that any amendment of them would be futile.[6]

### D. Whether Defendant Clark's Cross-Claim Against the CMC Defendants Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, because Plaintiff's claim against Defendant Clark has been dismissed, rendering Defendant Clark's cross-claim for indemnification or contribution moot. *See, e.g., Tabasko v. Direct Commc'ns Group, Inc.*, 90-CV-7954, 1996 WL 94816, at *1 (S.D.N.Y. March 4, 1996) (Chin, J.) ("Because I agree that Tabasko does not have standing under ERISA to assert a breach of fiduciary duty claim on his own behalf, the claims against Randall are dismissed. Consequently, Randall's cross-claims against EBP for contribution or indemnification are dismissed as moot . . . .").

For these reasons, Defendant Clark's cross-claim against the CMC Defendants is dismissed.

---

under no obligation to provide [the plaintiffs] with leave to amend their complaint, much less provide such leave *sua sponte*" where they neither requested leave to amend, nor indicated additional facts that might lead to a different result).

[6] *See Foman*, 371 U.S. at 182 (explaining that denial of leave to amend not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

**ACCORDINGLY,** it is

**ORDERED** that Defendant Clark's motion for judgment on the pleadings (Dkt. No. 36) is **GRANTED**; and it is further

**ORDERED** that the CMC Defendants' motion for judgment on the pleadings (Dkt. No. 47) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 22) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court shall issue a Judgment for Defendants and close this action.

Dated: September 29, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge